NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM M. MATTHEWS,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2018-1097

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 16-1687, Judge Mary J. Schoelen.

---

Decided: September 20, 2018

---

WILLIAM M. MATTHEWS, Philadelphia, PA, pro se.

JESSICA COLE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; BRIAN D. GRIFFIN, CHRISTOPHER O. ADELOYE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before NEWMAN, LOURIE, and REYNA, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

William M. Matthews appeals the decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming a Board of Veterans' Appeals ("Board") denial of his claim for disability compensation for AIDS arising from human immunodeficiency virus ("HIV") infection.[1] The government challenges our appellate jurisdiction, stating that this case presents only questions of fact and thus is not within our authority, absent constitutional issues. We agree, and dismiss this appeal for lack of jurisdiction.

## BACKGROUND

Mr. Matthews served on active duty with the United States Marine Corps from May 1979 to December 1982. In 1997 he was diagnosed with AIDS. In July 2008 he filed a claim for disability compensation for service-related infection with HIV, stating that in June 1979 he became infected after he had a tooth extracted and drank water from a canteen that he stated contained semen.

In October 2008 the Regional Office denied Mr. Matthews' service-connection claim. He appealed, and the Board found that the preponderance of evidence was against service connection. The Board relied on two medical examiner opinions. In the first opinion, an examiner with a specialty in infectious diseases opined that it was less likely than not that Mr. Matthews contracted AIDS by drinking water from a canteen after a tooth

---

[1]  *Matthews v. Shulkin*, No. 16-1687, 2017 WL 3224890 (Vet. App. July 31, 2017) ("Vet. Ct. Op."); *In re Matthews*, Bd. Vet. App. 1612870, 2016 WL 2652792 (Mar. 30, 2016) ("BVA Dec.").

extraction, even if the water was contaminated with semen. The medical examiner explained that HIV is not spread by air or water and that the primary modes of transmission of HIV are through unprotected sex or sharing intravenous needles. The examiner stated that HIV survives outside the human body for less than one minute, and that there are no cases in the medical literature describing transmission by drinking water containing semen. The examiner also reviewed Mr. Matthews' service medical records and observed that there were no complaints or treatment for any HIV-related symptoms or other significant health problems suggestive of HIV infection.

A second medical examiner reached the same conclusion. The second examiner observed that the average time between HIV infection and development of AIDS is ten years, whereas eighteen years had elapsed between the 1979 canteen water-drinking incident and Mr. Matthews' 1997 diagnosis with AIDS. The second examiner concluded that it was "most likely" that Mr. Matthews' diagnosis of AIDS resulted from HIV infection after his discharge from service.

On appeal of the Regional Office decision, the Board considered Mr. Matthews' testimony concerning his theory of infection during service. The Board acknowledged that "[a] veteran's lay statements may be competent to support a claim for service connection by supporting the occurrence of lay observable events or the presence of disability or symptoms of a disability subject to lay observation." BVA Dec. at *8; *see also* 38 C.F.R. § 3.159(a)(2) ("Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person."). However, the Board concluded that "as specialized training is required for a determination as to a diagnosis of AIDS and mode of HIV transmission, such therefore is not susceptible of lay opinions." *Id*. Accord-

ingly, the Board did not give any probative weight to Mr. Matthews' view of the source of his HIV infection. *Id.* The Veterans Court affirmed, finding no error in the Board's development of the evidence, the adequacy of its rationale, and the basis of its decision. Vet. Ct. Op. at *2.

Mr. Matthews appeals to this court.[2] He asserts factual errors and argues that his lay evidence was not adequately considered. *See* Appellant's Inf. Br. 3 (stating "My arguments consist mainly of the fact . . . the chronological order is a little off . . . . [w]hich means that the information that was used to make the decision was wrong"); *see also* Appellant's Inf. Reply Br. 2. He further argues that it was error for the Board to base its decision "on not having any record of treatment for HIV" because "there would have been no records of treatment[ ] if no testing was being performed in the military at the time of my active service." Appellant's Inf. Br. 3; *see also* Appellant's Inf. Reply Br. 3.

## APPELLATE JURISDICTION

The government argues that the Federal Circuit does not have jurisdiction of any aspect of the appeal, stating that there are no questions of law or constitutional right, and that factual questions decided by the Veterans Court are beyond our appellate authority.

This court's appellate jurisdiction with respect to decisions of the Veterans Court is assigned by statute. We have jurisdiction "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter)." 38 U.S.C. § 7292(a). Constitutional issues, whether applied to law or fact, are

---

[2]    Mr. Matthews is proceeding *pro se*; such "filings must be read liberally." *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013).

subject to our review.  38 U.S.C. § 7292(d)(1).  Unless a constitutional issue is involved, this court lacks jurisdiction to "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case."  38 U.S.C. § 7292(d)(2).

Mr. Matthews argues that the Veterans Court erred in law in the "chronological order" of his disease progression, arguing that it is medically possible to have a lengthy delay between infection with HIV and manifestation of AIDS, in his case an eighteen-year delay.  This medical fact is not disputed.  *See* World Health Organization Online Q&A for HIV/AIDS, *available at* http://www.who.int/features/qa/71/en/ ("The time between acquiring HIV and an AIDS diagnosis is usually between 10–15 years, but sometimes longer.").  The Board relied on the two medical examiners, and held that these expert opinions outweighed Mr. Matthews' view that his HIV infection resulted from the 1979 canteen-drinking water incident.  Mr. Matthews argues that his view should have prevailed, for lay evidence is authorized by statute and regulation.

Mr. Matthews cites 38 U.S.C. § 5107(b), which provides that "[t]he Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary."  In accordance with 38 C.F.R. § 3.307(b), "[t]he factual basis [for establishing a chronic disease] may be established by medical evidence, competent lay evidence or both."  And 38 C.F.R. § 3.303(a) provides that each disabling condition for which a veteran seeks service connection "must be considered on the basis of . . . all pertinent medical and lay evidence."  Thus, "lay evidence is one type of evidence that must be considered, if submitted, when a veteran's claim seeks disability benefits."  *Buchanan v. Nicholson*, 451 F.3d 1331, 1335 (Fed. Cir. 2006).  Mr. Matthews argues that his lay evi-

dence regarding the source of his HIV infection and its progression to AIDS was inadequately considered.

"[W]e have jurisdiction over the question of whether the Board errs as a matter of law when it refuses to consider lay evidence based on the assumption that only those possessing specialized medical training and knowledge are competent to diagnose or provide an opinion on a disease or injury." *Robinson v. Shinseki*, 312 F. App'x 336, 338 (Fed. Cir. 2009) (citing *Buchanan*, 451 F.3d at 1334–35, *Jandreau v. Nicholson*, 492 F.3d 1372, 1376–77 (Fed. Cir. 2007)). Here, however, the Board heard Mr. Matthew's lay testimony, thoroughly weighed it, and found his allegations wanting. *E.g.*, BVA Dec. at *7 ("The Board finds these statements by the appellant about drinking semen from a canteen in service to be facially implausible, biased and inconsistent with the natural properties of semen."). The Board also considered Mr. Matthews' competency to assess the etiology of his medical condition, including his "competence to report incurring HIV infection during his military service," and found that he lacked that competence because specialized training is required to diagnose AIDS and mode of transmission of HIV, and thus is not susceptible to proof through lay opinions. *Id.* at *7–8. The Board also addressed Mr. Matthews' lay evidence regarding in-service symptoms, concluding that "medical examination is needed in order to properly attribute [to a particular malady] generic symptoms such as the weight loss, sore throat, swollen glands and fatigue [Mr. Matthews] testified he experienced beginning in 1983." *Id.* (citing *King v. Shinseki,* 700 F.3d 1339 (Fed. Cir. 2012)).

> The regulatory definition of competent lay evidence is:

> any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circum-

stances and conveys matters that can be observed and described by a lay person.

38 C.F.R. § 3.159(a)(2); *see also* 146 Cong. Rec. H9909, H9915 (Oct. 17, 2000) ("Competent evidence would be evidence that is offered by someone capable of attesting to it; it need not be evidence that is credible or sufficient to establish the claim."). In *Jandreau*, this court further explained that:

Lay evidence can be competent and sufficient to establish a diagnosis of a condition when: (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional.

492 F.3d at 1377 (footnote omitted).

"The competence of lay testimony depends on the nature of the condition." *Young v. McDonald*, 766 F.3d 1348, 1353 (Fed. Cir. 2014). As the complexity of the condition increases, expert evaluation becomes more necessary. *See id.* at 1353 (post-traumatic stress disorder is too complex for lay evidence, standing alone, to be "competent and sufficient to identify."); *King*, 700 F.3d at 1345 (lay testimony on causation of bilateral hip and back conditions was not competent); *Jandreau*, 492 F.3d at 1377 n.4. ("Sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example a form of cancer."); *Fleming v. McDonald*, No. 15-3987, 2016 WL 5400510, at *4 (Vet. App. Sept. 28, 2016) (lay testimony linking anxiety disorder and panic attacks to service was not competent"); 146 Cong. Rec. H9909, H9915 (Oct. 17, 2000) ("A veteran (or layperson) can provide competent evidence that he or she has a pain in the knee since that evidence is fit for the purpose for which it is offered. However, VA would not be bound to accept a

veteran's assertion that he has a torn ligament, for that would require more sophisticated information, such as the results of a medical examination or special medical testing."). The Board held that the testimony of Mr. Matthews and the views of his attorney, concerning the etiology of this HIV infection, were not of probative weight. BVA Dec. at *8. The Board then gave dispositive weight to the testimony of the medical examiners concerning the modes of transmission of HIV and its period of gestation, and adopted their opinions as to the likelihood of infection on Mr. Matthews' theory of ingesting contaminated water. And the Veterans Court discerned no error in the Board's decision. Vet. Ct. Op. at *2.

Mr. Matthews stresses that at the time of his military service there was no testing for HIV infection, pointing to the testimony of a medical examiner that testing of new recruits began in 1985. *See* Appellant's Inf. Br. 3; *see also* Regional Office "Supplemental Statement of the Case," May 13, 2015, at 4–5 ("The FDA licensed the first commercial blood test for HIV in 1985 and the Pentagon announced a plan to begin testing new military recruits the same year.").

In evaluating the competency of Mr. Matthews and the plausibility and weight of the evidence he and the medical experts presented, the Board did not commit legal error. The Board discussed the symptoms that Mr. Matthews stated he experienced after drinking from the canteen, including weight loss, sore throat, swollen glands, and fatigue. The Board did not err in law in weighing this lay evidence, as well as that regarding etiology, in the context of the evidence presented by the two medical examiners. The Veterans Court also did not err in law in considering the competency of the entirety of the evidence. Absent legal error, we do not review the Board's finding of fact, as affirmed by the Veterans Court, that there was not service connection for Mr. Matthews' AIDS affliction.

CONCLUSION

We have considered all of Mr. Matthews' arguments. Because Mr. Matthews does not raise any issue within our jurisdiction, we dismiss this appeal.

**DISMISSED**

Each party shall bear its costs.